**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dustin Matthews, )<br> )<br> Plaintiff, )<br>vs. )<br> )<br>City of Tempe, et al., )<br> )<br> Defendants. )<br> ) | No. CV-22-00407-PHX-SPL<br><br>**ORDER** |

Before the Court are Defendants City of Tempe, Adrianne Ward, Alexis Allen, Jennifer Curtiss, and Marcos Romero's ("Defendants") Motion for Summary Judgment (Doc. 149), Plaintiff Dustin Matthew's ("Plaintiff") Response (Doc. 157), and Defendants' Reply (Doc. 164). The Motions are fully briefed, and this Court now rules as follows.[1]

### I. BACKGROUND

Plaintiff is a former employee of the City of Tempe, and former co-worker of Adrianne Ward, Alexis Allen, Jennifer Curtiss, and Marcos Romero. (Doc. 157 at 2-5). Specifically, Plaintiff worked for the Tempe City Court team. (Doc. 149 at 2). During roughly the second half of 2020, and the first half of 2021, the City Court team had a rotating schedule that allowed its employees to telecommute every fifth week. (*Id.*). Also during this time, the City Court team employees were entitled to Families First Coronavirus

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Response Act ("FFCRA") leave. (*Id*.). In December of 2020, the City Court team leadership instituted a policy in which employees returning from FFCRA leave would be allowed to telecommute their first week of returning to work in order to ease the transition back to onsite work. (*Id*.). When this policy was implemented, Plaintiff had already used all of his FFCRA leave and therefore the policy was not offered to him. (*Id*. at 3). The policy was offered to two other employees. (*Id*. at 2).

On January 7, 2021, Plaintiff filed an internal complaint of gender discrimination, claiming that he was denied this opportunity to telecommute, while two others were granted it. (Doc. 157 at 2). Plaintiff asserted that his co-workers were granted this request because they were female, while he was denied because he is not. (*Id*.). Throughout January and February of 2021, Plaintiff and the City Court team leadership had several disputes about whether he could take leave due to COVID related symptoms. (Doc. 149 at 3). These disputes led the City Court team to issue a disciplinary action to Plaintiff on March 18, 2021. (*Id*. at 4). Later that year, the City Court leadership team began receiving reports of Plaintiff excessively using his work computer for personal matters. (*Id*.). After an investigation by the IT department, the leadership team issued another disciplinary action to Plaintiff on September 29, 2021. (*Id*.). This led to a November 18, 2021, recommendation to terminate Plaintiff for violation of the City Personnel Rules and the Judicial Code of Conduct. (*Id*.). Plaintiff was fired on December 27, 2021. (*Id*.). As a result, Plaintiff initiated this action, *pro se*, against Defendants on March 16, 2022. (Doc. 1).

On August 26, 2022, Plaintiff filed an Amended Complaint (Doc. 52), which serves as the operative complaint in this matter. Plaintiff brings claims for gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and similar claims under 42 U.S.C. §§ 1981 and 1983. (Doc. 52 at 4). Plaintiff also brings several related claims under Arizona state law. (*Id*.). On February 17, 2023, this Court dismissed Plaintiff's § 1981 claim following denial Plaintiff's Motion for Partial Summary Judgment. (Doc. 131).

///

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). A court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III. DISCUSSION

A. *Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e*

Plaintiff argues that because he was not allowed to telework during a requested period, and that two of his female co-workers were allowed to, he was discriminated against. (Doc. 157 at 6). Defendants argue that a loss of teleworking privileges is not an adverse employment decision, and that Plaintiff cannot show that he was treated differently because of his gender. (Doc. 149 at 7, 9).

To establish a prima facie case of discrimination under Title VII, a plaintiff must show evidence of either discriminatory treatment or impact. *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1484 (9th Cir. 1993). Under a theory of discriminatory treatment, a plaintiff must provide evidence that a defendant had a discriminatory intent or motive. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988). In the absence of direct evidence of discrimination, the plaintiff may rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green* to establish a prima facie case of discriminatory treatment. 411 U.S. 792, 802 (1973). This framework requires showing that: (1) the plaintiff belongs to a

protected class, (2) the plaintiff was qualified for the position or benefit, (3) the plaintiff was subject to an adverse employment action, and (4) similarly situated people were treated more favorably than the plaintiff. *Id.*; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, (1993). Under the *McDonnell Douglas* framework, "[t]he requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

An adverse employment decision is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "The Ninth Circuit takes an expansive view on what constitutes an adverse employment action" and examples include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Ramirez v. Olympic Health Mgmt. Sys., Inc.*, 610 F. Supp. 2d 1266, 1281 (E.D. Wash. 2009) (citing *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000)). Despite this expansive view though, "not every employment decision amounts to an adverse employment action" and courts are advised to avoid "trivial personnel actions brought by irritable, chip-on-the-shoulder employees." *Id*. (quotation marks and citation omitted).

Although the Ninth Circuit has not directly ruled on whether loss of teleworking options is considered an adverse employment decision under *McDonnell*, several other circuits have. *See Terry v. Perdue*, No. 20-2016, 2021 WL 3418124, at *2 (4th Cir. Aug. 5, 2021) (holding that the loss of one teleworking day, was not an adverse employment action as it "did not change the terms and conditions of his employment"); *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (stating that the loss of a teleworking day was not only not an adverse employment action but that it "borders on the frivolous"); *Maine v. Azar*, No. GLR-16-3788, 2021 WL 3617215, at *19 (D. Md. Aug. 16, 2021) (holding that the denial of a request to telework did not constitute an adverse employment action); *Byrd v.*

*Vilsack*, 931 F.Supp.2d 27, 41 (D.D.C. 2013) ("[T]he denial of an employee's request to work from home on a few occasions, without more, does not constitute an adverse employment action under Title VII."); *Beckham v. Nat'l R.R. Passenger Corp.*, 736 F.Supp.2d 130, 149 (D.D.C. 2010) ("Being denied the ability to work from home on, at most, three occasions is a minor annoyance, not an adverse action."); *Homburg v. UPS*, No. 05-2144-KHV, 2006 WL 2092457, at *9 (D. Kan. July 27, 2006) ("[D]istrict courts . . . have consistently held that the denial of a request to work from home is not adverse employment action.") (collecting cases); *Seldon v. Nat'l R.R. Passenger Corp.*, No. 05-4165, 2007 WL 3119976, at *3 (E.D. Pa. Oct. 24, 2007) (collecting cases).

As previously stated by this Court (Doc. 131 at 6–8), Plaintiff has not presented direct evidence of discriminatory intent by Defendant, and thus the *McDonnell Douglas* framework applies. *See* 411 U.S. at 802; *see also Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005) ("Direct evidence is 'evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption' and 'typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer.'" (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)))). Here, both parties agree that certain employees were allowed to telework during December 2020, and that Plaintiff was not. (Doc. 159 at 10). Both parties also agree that this, at most, would have constituted five days of remote work. (*Id*.). As this disparate treatment is the basis for Plaintiff's Title VII claim, it must qualify as an adverse employment action in order to survive summary judgement. (Doc. 157 at 7).

The Court finds that the Ninth Circuit definition of an adverse employment decision aligns with the cases that hold that a loss of teleworking privileges does not qualify as an adverse employment action under the *McDonnell Douglas* framework. The loss of at most five days of remote work options is far too short to constitute a significant change in employment status. Even if Plaintiff had been allowed to take the teleworking days, it is assumed that he would have been required to keep up with the same assigned duties, and that his compensation would not have changed. In that scenario, the only thing that would

have changed is whether Plaintiff would have been allowed to complete these duties from home. This difference is not analogous to "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc.*, 524 U.S. at 761. Further, the fact that Plaintiff may have used additional leave days to be physically absent during that time was his decision alone, and not the necessary effect of the denial of his request for teleworking status. Accordingly, Plaintiff has failed to demonstrate that he was subject to an adverse employment action, and as a result has failed to state a prima facie case under the *McDonnell Douglas* framework. Defendants motion for summary judgment is granted on Plaintiff's gender discrimination claim.

B. *Retaliation under Title VII and § 1983*

Defendants argue that Plaintiff has failed to put forth evidence of causation between his participation in a protected activity and his termination. (Doc. 149 at 12). Plaintiff argues that the closeness in time between the two circumstantially demonstrates retaliation, and that Defendants did not take his discrimination complaint seriously. (Doc. 164 at 10-11). Defendants respond by providing several non-retaliatory reasons for Plaintiff's disciplining and firing, such as misuse of government resources and unexcused absences. (Doc. 149 at 14-16).

"The *McDonnell Douglas* framework and allocation of proof that governs disparate treatment claims also governs retaliation claims." *Cheeks v. Gen. Dynamics*, 22 F. Supp. 3d 1015, 1035 (D. Ariz. 2014) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)); *see also Lelaind v. City & Cnty. of S.F.*, 576 F. Supp. 2d 1079, 1094 (N.D. Cal. 2008) ("Like claims for disparate treatment, claims for retaliation under . . . section 1983 . . . are analyzed under the *McDonnell Douglas* burden-shifting framework."). A plaintiff must first meet his or her burden of establishing a prima facie case of retaliation, which requires the plaintiff to show: "(1) engagement in a protected activity; (2) an adverse employment action; and, (3) a causal link between the two." *Cheeks*, 22 F. Supp. 3d at 1035 (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). As with a

disparate treatment claim, the burden then shifts to the defendant to "articulat[e] a legitimate, nonretaliatory reason for its action." *Id.* (citing *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005)). "Once the defendant has presented a purpose for the action, the plaintiff bears the ultimate burden of providing evidence that the defendant's reason is 'merely a pretext for a retaliatory motive.'" *Id.* (citing *Porter*, 419 F.3d at 894).

To establish causation a plaintiff must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [the plaintiff's] firing and that but for such activity [the plaintiff] would not have been fired." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002) (quoting *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986)). Causation may be inferred from timing alone when an adverse employment action follows on the heels of protected activity. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). However, the Ninth Circuit has generally required temporal proximity to be "less than three months between the protected activity and the adverse employment action for the employee to establish causation based on timing alone." *See Alvarado v. Nw. Fire Dist.*, No. CIV 19-198-TUC-CKJ, 2021 WL 1627507, at *7 (D. Ariz. Apr. 27, 2021) (collecting cases).

Here, Plaintiff filed an internal gender discrimination complaint on January 7, 2021, which Defendants do not dispute was a protected activity under *McDonnell Douglas*. (Doc. 159 at 2). Following this, Plaintiff was disciplined twice; first on March 18, 2021, and again on September 29, 2021, which led to his ultimate termination on December 27, 2021. (Doc. 159 at 20, 30). While the second disciplining incident and firing were outside the three-month window needed to show temporal proximity, the Court will accept for the sake of argument that Plaintiff has met his burden of production in showing a causal connection. However, Defendants provide an ample number of non-discriminatory reasons for Plaintiff's disciplining and firing. (Doc. 149 at 14-16). According to Defendants, Plaintiff was disciplined for "engaging in non-work-related activities during work hours" (Doc. 159 at 22), storing over 500 personal documents on his work computer (Doc. 149 at 15), and

7

failing to perform his assigned duties (*Id.* at 16). Thus, the burden shifts back to Plaintiff to show that Defendant's reason is "merely a pretext for a retaliatory motive." *Cheeks*, 22 F. Supp. 3d at 1035.

Plaintiff fails to provide any additional evidence as to why Defendant's proffered reasons are pretextual. Plaintiff merely states that because "there were no issues with my employment" prior to filing a discrimination complaint, any discipline afterwards is retaliatory. (Doc. 157 at 11). Plaintiff's contention that Defendants did not take adverse action immediately after they became aware of potential workplace violations is immaterial. (*Id.*). Defendants may have wished to first attempt to resolve the disciplinary issues outside of a formal reprimand process. Further, Plaintiff's reliance on non-binding cases such as *Smith v. Xerox Corp.*, 371 Fed. Appx. 514 (5th Cir. 2010), *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589-590 (5th Cir. 1998), and *Southwestern Bell Tel. Co. v. Garza*, 58 S.W.3d 214, 229 (Tex. App. 2001), in no way provide additional factual support for arguing that Defendant's reasons are pretextual. In sum, the arguments are insufficient to meet the burden of production and thus Plaintiff has failed to state a prima facie case for retaliation under § 1983.

C. *Intentional Infliction of Emotional Distress*

Defendants argue that Plaintiff's intentional infliction of emotional distress ("IIED") claim is barred by the statute of limitations, and that he has provided no evidence in support of the claim. (Doc. 149 at 19-20). Plaintiff argues that the statute of limitations does not apply to his IIED claim because when the claim accrued is a question of fact, and that he alleged sufficient facts in the Amended Complaint. (Doc. 157. at 14-15).

An IIED claim under Arizona law requires proof that (1) the defendant engaged in "extreme" and "outrageous" conduct (2) with intent to cause emotional distress or reckless disregard that emotional distress will occur, and (3) the plaintiff suffers severe emotional distress. *McKee v. State*, 388 P.3d 14, 20 (Ariz. Ct. App. 2016) (citing *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)).

///

1. Statute of limitations

In Arizona, plaintiffs have one year to bring an IIED claim against a public entity. A.R.S. § 12-821; *Watkins v. Arpaio*, 367 P.3d 72, 76–77 (Ariz. Ct. App. 2016) (discussing how the doctrine of "continuing wrong" impacts the statute of limitations); *see also Ruggles v. City of Scottsdale*, 830 F. App'x 886 (9th Cir. 2020) (upholding district court dismissal of an IIED claim outside the statute of limitations). An IIED claim accrues "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12–821.01(B). Thus for IIED claims against a public entity, "[t]he relevant inquiry is when did a plaintiff's knowledge, understanding, and acceptance in the aggregate provide [ ] sufficient facts to constitute a cause of action." *Thompson v. Pima County*, 243 P.3d 1024, 1028 (Ariz. Ct. App. 2010) (alterations in the original) (internal citations omitted) (quoting *Little v. State*, 240 P.3d 861, 864 (Ariz. Ct. App. 2010)).

Plaintiff filed the instant claim on March 16, 2022. (Doc. 1). While it appears that most of the adverse contact between Defendants and Plaintiff occurred before March 16, 2021, Plaintiff does claim to have filed an additional notice of claim on March 30, 2021. (Doc. 157 at 14; Doc. 36-1 at 2). Plaintiff claims this included his IIED theory. (Docs. 157 at 14, 52 at 6). It is possible that actions by Defendants, such as firing Plaintiff, could have caused additional emotional distress after March 16, 2021, however the Plaintiff has provided no evidence of this. As a result, Plaintiff has not shown a prima facie case for a continuing wrong which would extend the statute of limitations. This makes Plaintiff's IIED claim insufficient to survive summary judgment. *Celotex Corp.*, 477 U.S. at 323. Nevertheless, Plaintiff's claim for IIED still fails on the merits, and thus for the sake of argument the Court will assume that this is the conduct underlying Plaintiff's claim for IIED. *See Leisek*, 278 F.3d at 898 (instructing courts to view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party).

2. Extreme and Outrageous Conduct

Arizona follows the definition of the "extreme and outrageous conduct" element

provided in the Restatement (Second) of Torts § 46 (comment d): "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1016 (Ariz. 1986) (quoting Restatement (Second) of Torts § 46). "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (alteration in original) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988), *cert. denied*, 498 U.S. 811 (1990)) (dismissing a claim by a plaintiff who was hospitalized for severe emotional problems following denial of promotions at work, deprived of her disability benefits by employer, called back to work early, and then fired in a letter delivered to her hospital bed). "The trial court, therefore, acts as society's conscience to determine whether alleged acts 'can be considered as extreme and outrageous conduct in order to state a claim for relief.'" *St. George v. Home Depot U.S.A., Inc.*, No. CV-04-1210-PCT-LOA, 2007 WL 604925 (D. Ariz. Feb. 22, 2007) (quoting *Cluff v. Farmers Ins. Exchange*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)).

In the present case, Plaintiff has failed to point to any evidence in the record demonstrating that Defendants' conduct was so "extreme and outrageous" as to be beyond "all possible bounds of decency." *Lucchesi*, 716 P.2d at 1015 (quoting Restatement (Second) of Torts § 46). Plaintiff accuses Defendants of failing to adhere to internal policies, being untruthful in discovery responses, and altering documents for the purpose of terminating him. (Doc. 157 at 15). Yet Plaintiff cites no case which holds that this or similar conduct suffices as extreme or outrageous conduct. This is because no reasonable juror could find such alleged conduct to be "utterly intolerable in a civilized community." Restatement (Second) of Torts § 46; *see Lucchesi*, 716 P.2d at 1016. Plaintiff's case is an

employment dispute, and none of the alleged conduct goes far beyond what is described in employment disputes every day in courtrooms across America. *See Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1386–87 (Ariz. Ct. App. 1994) (dismissing claim of employee who was escorted out of premises in middle of night by armed security team, allowed to use bathroom on way out only if accompanied into stall by armed escorts, fired in the lobby in front of coworkers and media, and prohibited from clearing personal effects out of office). Therefore, Plaintiff has failed to meet the requisite first element in his claim for IIED.

### 3. Severe Emotional Distress

As the element of "severe emotional distress" is not readily capable of precise legal definition, Arizona courts apply a case-by-case analysis with respect to these determinations. *See Lucchesi*, 716 P.2d at 1016. Thus, courts must distinguish between conduct likely to cause mere emotional distress compared to conduct causing "severe emotional distress." *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 499 (Ariz. Ct. App.1982) (finding that difficulty sleeping insufficient to establish a claim under IIED). Crying, being stressed and upset, and having headaches is not enough to establish severe harm. *Spratt v. N. Auto. Corp.*, 958 F.Supp. 456, 461 (D. Ariz. 1996). Neither is shock, stress, moodiness, and estrangement from friends and coworkers. *Bodett v. Coxcom*, 366 F.3d 736, 747 (9th Cir. 2004). In contrast, anxiety that results in physical symptoms such as high blood pressure, chest pains, fatigue, and dizziness does constitute severe emotional distress. *See Ford*, 734 P.2d at 585 (1987). Anger and depression coupled with physical ailments such as headaches and hemorrhoids resulting from losing contact with one's child has also been found to constitute severe emotional distress. *See Pankratz v. Willis*, 744 P.2d 1182, 1191 (Ariz. App. 1987).

Plaintiff has failed to satisfy the third prong of his IIED claim, that he suffered severe emotional distress. Merely claiming "loss of enjoyment of life, emotional distress . . . anxiety, and depression" is insufficient on its own to make a prima facie case for IIED. (Doc. 52 at 7). This generalized description of Plaintiffs feelings, by itself, is lacking.

1  *Midas Muffler Shop*, 650 P.2d at 499. Plaintiff provides no additional support for his claim in his Controverting Statement of Facts and Separate Statement of Facts (Doc. 159), or in his Response to the instant Motion for Summary Judgment (Doc. 157). As a result, Plaintiff has not met his burden at this stage. Defendant's Motion for Summary Judgment is granted.

E. *Negligent Infliction of Emotional Distress*

As an alternative to his IIED claim, Plaintiff has also asserted a claim for negligent infliction of emotional distress. (Docs. 52 at 15, 157 at 15). Defendants have pointed out that Plaintiff has failed to provide any evidence of bodily harm or substantial emotional disturbance. (Doc. 149 at 12).

"A negligent infliction of emotional distress cause of action requires the plaintiff to: (1) witness an injury to a closely related person, (2) suffer mental anguish manifested as physical injury, and (3) be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." *Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989). "Arizona courts have long held that a claim for negligent infliction of emotional distress requires a showing of bodily harm." *Monaco v. Health Partners of S. Ariz.*, 995 P.2d 735, 738 (Ariz. Ct. App. 1999) (citing *Keck v. Jackson*, 593 P.2d 668 (Ariz. 1979)).

Here, Plaintiff has not pled or provided any facts that indicate he suffered bodily harm which manifested as a result of his negative interactions with Defendants. Further, his situation is not that of being in the "zone of danger" while witnessing a horrific act to a family member. A claim of negligent infliction of emotional distress is wholly inapplicable to the alleged circumstances of Plaintiff's case and therefore Defendants' Motion for Summary Judgment is granted on this claim.

C. *42 U.S.C. § 12203 and Arizona State Law Claims*

Defendants assert that Plaintiff's claims both under the Arizona Civil Rights Act ("ACRA") (A.R.S. § 41-1463 and 1464) and under the Arizona Employment Protection Act ("AEPA") (A.R.S § 23-1501) fail for the same reasons as the Title VII claims. (Doc. 149 at 19-20). Plaintiff counters that he has met his burden under the federal claims and

thus the state law claims should survive summary judgement. (Doc. 157. at 14). Plaintiff does not address Defendants' arguments about the applicability of 42 U.S.C. § 12203, Art. II, § 36 of the Arizona Constitution, and Tempe City Code, Chapter 2, Article VIII. (*Id.*).

### 1. ACRA

"[T]he Arizona Civil Rights Act is 'generally identical' to Title VII, and therefore 'federal Title VII case law [is] persuasive in the interpretation of [the Arizona] Civil Rights Act.'" *Bodett*, 366 F.3d at 742 (second and third alterations in the original) (quoting *Higdon v. Evergreen Int'l Airlines, Inc.*, 673 P.2d 907, 909–10 n.3 (Ariz. 1983)). Thus, ACRA claims must proceed along the lines of the practice laid out under the *McDonnell Douglas* framework. *Id*. at 743. "[I]n enacting civil rights legislation which is substantially identical to the federal act, the Arizona legislature intended to accomplish the same objectives on the state level." *Civil Rights Div. of Ariz. Dep't of Law v. Superior Ct. In & For Pima Cty.*, 706 P.2d 745, 750 (Ariz. Ct. App. 1985).

As the court has already completed analysis of Plaintiff's claims under the *McDonnell Douglas* framework, Plaintiff's claims similarly fail under the ACRA. Plaintiff's denied request to telework does not constitute an adverse employment decision. Summary judgment is granted to Defendants for claims arising under A.R.S. §§ 41-1463 and 1464.

### 2. AEPA

The AEPA provides a claim for wrongful termination against an employer where the employer has terminated the employment relationship in retaliation for the disclosure by the employee of violations of the Arizona Constitution, or state statutes. A.R.S. § 23–1501(A)(3)(c)(ii). To prove retaliation under the AEPA, a plaintiff must show that (1) he engaged in a protected activity, (2) the employer subjected him to an adverse employment decision, and (3) there exists a causal link between the protected activity and the adverse employment decision. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). An employer's articulation of non-retaliatory reasons shifts the burden to the employee to show that the employer's reasons for an adverse employment action were a pretext for

retaliation. *Godwin v. Hunt Wesson*, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).

As discussed above in the Title VII analysis, Plaintiff has not presented any evidence countering Defendant's non-retaliatory reasons for terminating him. This is necessary to demonstrate some form of causal connection between his alleged whistleblowing and firing. Thus, Plaintiff has failed to make a prima facie case under the AEPA. Summary judgment is granted to Defendants for Plaintiff's claim arising under A.R.S § 23-1501.

### 3. 42 U.S.C. § 12203, Art. II, § 36 of the Arizona Constitution, and Tempe City Code, Chapter 2, Article VIII

If an argument is not properly argued and explained, it is waived. *See* L.R. Civ. 7.2(i); *see also, Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (holding that a party's argument was waived because "instead of making legal arguments," the party simply made a "bold assertion" with "little if any analysis to assist the court in evaluating its legal challenge"); *Currie v. Maricopa County Cmty. College Dist.*, No. CV–07–2093, 2008 WL 2512841, at *2 n. 1 (D. Ariz. 2008) ("Plaintiff does not respond to this argument, and her failure to do so serves as an independent basis upon which to grant [the] motion[.]") (alterations in the original).

Defendants argue that the remaining state law provisions which Plaintiff asserts in his complaint are either inapplicable or provide no remedy, thus should be dismissed. (Doc. 149 at 20). Plaintiff does not address any of these arguments in his response. (Doc. 157). As a failure to respond to these arguments constitutes a waiver under Local Rule 7.2(i), the Court accepts these claims as waived. Summary judgment is granted for Plaintiff's claims arising under 42 U.S.C. § 12203, Art. II, § 36 of the Arizona Constitution, and Tempe City Code, Chapter 2, Article VIII.

### IV.  CONCLUSION

In sum, Plaintiff has failed to meet his burden of production on each of his claims. Even in drawing all reasonable inferences in favor of Plaintiff, he has "failed to make a showing sufficient to establish an element essential to that [his] case on which [he] bear[s]

the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322–23. Thus, summary judgment is warranted here.

**IT IS ORDERED** that Defendants City of Tempe, Adrianne Ward, Alexis Allen, Jennifer Curtiss, and Marcos Romero's Motion for Summary Judgment (Doc. 149) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **enter judgment** and **terminate** this action accordingly.

**IT IS FURTHER ORDERED** that the only matter still pending in this case before the Court is Plaintiff's Notice (Doc. 166) regarding the Court's Order for Sanctions (Doc. 165).

Dated this 16th day of October, 2023.

Honorable Steven P. Logan
United States District Judge